IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ELISAPETA ALAIMALEATA, ET AL., | ) ) ) | Civil No. 23-00164 LEK-KJM |
| Plaintiffs, | ) ) ) ) | FINDINGS AND RECOMMENDATION TO GRANT UNITED STATES' PETITION FOR |
| vs. | ) ) | GOOD FAITH SETTLEMENT DETERMINATION (ECF NO. 146) |
| THE UNITED STATES OF AMERICA, ET AL. | ) ) ) | |
| Defendants. | ) ) ) | |
| _____ | ) | |

### FINDINGS AND RECOMMENDATION TO GRANT UNITED STATES' PETITION FOR GOOD FAITH SETTLEMENT DETERMINATION

On March 12, 2026, Defendant United States of America ("Defendant") filed a Petition for Good Faith Settlement Determination ("Petition"), seeking a determination of good faith settlement for 22 settling plaintiffs.[1]  ECF No. 146. The Petition states that Plaintiffs consent to the Petition.  *Id.* at 2.  On April 6, 2026, non-parties Ohana Military Communities, LLC ("Ohana") and Hunt MH Property Management, LLC ("Hunt") timely filed a Memorandum in Opposition to the Petition.  ECF No. 149.  On April 16, 2026, Defendant filed a Reply.  ECF No. 154.

---

[1]  *See* ECF No. 146-3 for a list of the settling plaintiffs that are the subject of the Petition.

On April 29, 2026, the Court held a hearing on the Petition via video conference.  ECF No. 165.  Robert M. Hatch, Esq., Dana Vogel, Esq., and Keena Patel, Esq., appeared on behalf of Plaintiffs.  Kenneth A. Haywood, Esq., and Alanna Horan, Esq., appeared on behalf of Defendant.  Randall C. Whattoff, Esq., appeared on behalf of Ohana and Hunt.

After carefully considering the memoranda, applicable law, record in this case, and the oral arguments of counsel, the Court FINDS AND RECOMMENDS that the district court GRANT the Petition for the reasons set forth below.

BACKGROUND

I.      The Instant Lawsuit—*Alaimaleata, et al. v. United States, et al.*

This matter is one of a number of cases filed in this district in which the plaintiffs assert claims under the Federal Tort Claims Act ("FTCA") against the United States arising from the 2021 releases of jet fuel at the Red Hill Bulk Fuel Storage Facility ("Red Hill").  Plaintiffs filed their Complaint in August 2023.  ECF No. 1.  The operative pleading is the Fourth Amended Complaint.  ECF No. 70.  Plaintiffs assert claims for negligence and nuisance under the FTCA.  *Id.* at 85–88.

Aside from the 22 settling plaintiffs that are the subject of the Petition, 10 plaintiffs remain in this case.  ECF No. 155 at 3 (stating that 11 plaintiffs remain); ECF No. 158 (dismissing Plaintiff Rashel Washburn's claims).  Plaintiffs assert

2

that the 10 remaining plaintiffs plan to proceed as follows:  (1) six have decided to

participate in the fast-track trial process, ECF No. 147; ECF No. 155 at 3; (2) one

has elected to voluntarily dismiss his claims, ECF No. 155 at 4; (3) two have not

yet decided how to proceed, *id.*; and (4) one has been unreachable despite

reasonable efforts, *id.* at 3.  The fast-track trial is set for November 16, 2026,

before the district court.  ECF No. 147 at 6 ¶ 6.

II.    *Feindt, et al. v. United States*, Civil No. 22-00397 LEK-KJM

In a related matter, *Feindt, et al. v. United States*, plaintiffs assert FTCA

claims against the United States related to the November 2021 fuel release.  The

district court conducted a 10-day bench trial for 17 bellwether plaintiffs beginning

on April 29, 2024.  *Feindt*, ECF No. 633 at 1, 2025 WL 2254119, at *1 (D. Haw.

Aug. 7, 2025).  The trial included, among other things, testimony from 20 retained

experts, over 650 exhibits, and extensive pre- and post-trial briefing and other

filings.

On May 7, 2025, the district court issued its Preliminary Findings of Fact

and Conclusions of Law.  *Feindt*, ECF No. 621, 2025 WL 1348465 (D. Haw. May

7, 2025).  On August 7, 2025, the district court issued its Findings of Fact and

Conclusions of Law ("Final FOFCOL").  *Feindt*, ECF No. 633, 2025 WL

2254119.  In the Final FOFCOL, the district court awarded general damages for

each bellwether plaintiff in amounts ranging from $3,000 to $75,000 "for pain and

suffering, and, in the case of some Plaintiffs, emotional distress[.]" *Id.* at *61. In general, the minor bellwether plaintiffs received less than the adult bellwether plaintiffs. *See id.* (awarding plaintiffs T.F. and D.J, both of whom were under two years of age as of the November 2021 spill, $3,000 to $5,000 and awarding adult plaintiffs Aubart, Dietz, Feindt, Jessup, and Witt $37,500 each). The district court also awarded $1,000 in hedonic damages to each bellwether plaintiff and special damages in varying amounts to five bellwether plaintiffs. *Id.*

III.    Related Cases Against Plaintiffs' Landlords

In addition to the FTCA cases filed against the United States, residents who received water from the Joint Base Pearl Harbor Hickam ("JBPHH") water system filed lawsuits against their landlords and property managers for lost rent and consumer protection issues. *See, e.g.*, *Powell v. Ohana Mil. Cmtys., LLC,* Civil No. 24-00184 LEK-KJM (D. Haw.); *Island Palm Cmtys., LLC v. Amuro,* Civil No. 24-00458 LEK-RT (D. Haw.), *on appeal* Case No. 25-2153 (9th Cir.); *Lethgo v. CP IV Waterfront LLC d/b/a Kapilina Beach Homes,* Case No. 1CCV-22-000005 (Cir. Ct. of the First Circuit, State of Haw.)). In addition, similar cases filed against landlords seek damages for personal injuries arising from the November 2021 fuel release. *See, e.g.*, *Camp v. Ohana Military Cmtys., LLC,* Civil No. 24-00003 LEK-KJM (D. Haw.); *Bentley v. Hickam Cmtys.,* Civil No. 24-00007 LEK-KJM (D. Haw.)).

The landlords, such as Ohana, lease land from the United States to operate military housing communities.  Hunt serves as the property manager for the communities leased by Ohana.  Pursuant to the landlords' lease and utility agreements with the United States, the landlords purchase water from the United States, which is transported from the JBPHH water system to residents.  In the *Camp* and *Powell* lawsuits, Ohana and Hunt filed a third-party complaint against the United States for contribution, indemnification, and negligence.  *Camp*, ECF No. 43.

IV.    Settlements in the Instant Lawsuit

The Petition states that 22 plaintiffs have reached a settlement of their claims against Defendant.  The parties submitted an exemplar settlement agreement that all settling plaintiffs will execute.  ECF No. 146-4.  The settling plaintiffs settled their claims against Defendant in exchange for a full release of claims, as follows:

> 4.    Settling Plaintiff hereby agrees to accept the Settlement Amount in full settlement, satisfaction, and release of any and all Claims which Settling Plaintiff or his/her predecessors, successors, and assigns now has or may hereafter acquire against the United States of America, its agents, servants, or employees by reason of the above-captioned case or the facts asserted therein.  This Settlement Agreement does not release any Claims which Settling Plaintiff or his/her predecessors, successors, and assigns now has or may hereafter acquire against any other persons, including any Claims Settling Plaintiff currently may have against his/her landlord or property manager.

*Id.* at 2 ¶ 4.

On March 12, 2026, Defendant filed the Petition.  ECF No. 146.

DISCUSSION

The parties seek a determination that the settlements between the subject

settling plaintiffs and Defendant were made in good faith pursuant to Hawaii

Revised Statutes ("HRS") § 663–15.5.  "Under Hawaiʻi law, a party must petition

the court for a hearing on the issue of whether a settlement was made in good faith

and must serve notice to all known joint tortfeasors or co-obligors."  *Wyndham*

*Vacation Resorts, Inc. v. Architects Haw. Ltd.*, Civil No. 08-00236 DAE-LEK,

2010 WL 2347060, at *3 (D. Haw. May 21, 2010) (citing HRS § 663–15.5(b)),

*adopted by* 2010 WL 2346616 (D. Haw. June 7, 2010).  "The petition shall

indicate the settling parties and, except for a settlement that includes a

confidentiality agreement regarding the case or the terms of the settlement, the

basis, terms, and settlement amount."  *Id.* (citing HRS § 663–15.5(b)).  "Any non-

settling party [or alleged joint tortfeasor or co-obligor] may file an objection and

such party bears the burden of proving a lack of good faith.  *Id.* (citing HRS § 663–

15.5(b)).

A finding of good faith settlement:

(1) discharges the settling party from liability for contribution to other
joint tortfeasors, (2) reduces a plaintiff's claims against joint
tortfeasors by the amount stipulated to in the release or in the amount
of the consideration paid for it, whichever is greater, (3) bars other
joint tortfeasors from further claims against the settling joint
tortfeasor, except where there is a written indemnity agreement, and

6

(4) results in dismissal of all crossclaims against the settling joint tortfeasor, except where there is a written indemnity agreement.

*PacMar Techs. LLC v. Kao*, CIV NO. 22-00283 LEK-WRP, 2025 WL 3454786, at *3 (D. Haw. Dec. 1, 2025) (other citation omitted) (citing HRS § 663–15.5(a), (d)).

"The Hawaii Supreme Court has adopted a 'totality of circumstances' analysis to determine whether a settlement is made in good faith under HRS § 663–15.5." *Id.* (other citation omitted) (citing *Troyer v. Adams*, 102 Haw. 399, 77 P.3d 83 (2003)).  "The Hawaii Supreme Court set forth a nonexclusive list of issues that courts may consider when deciding whether a settlement was made in good faith" (the "*Troyer* factors"):

(1) the type of case and difficulty of proof at trial, e.g., rearend motor vehicle collision, medical malpractice, product liability, etc.;

(2) the realistic approximation of total damages that the plaintiff seeks;

(3) the strength of the plaintiff's claim and the realistic likelihood of his or her success at trial;

(4) the predicted expense of litigation;

(5) the relative degree of fault of the settling tortfeasors;

(6) the amount of consideration paid to settle the claims;

(7) the insurance policy limits and solvency of the joint tortfeasors;

(8) the relationship among the parties and whether it is conducive to collusion or wrongful conduct; and

(9) any other evidence that the settlement is aimed at injuring the interests of a non-settling tortfeasor or motivated by other wrongful purpose.

*Id.* (other citation omitted) (citing *Troyer*, 102 Haw. at 427, 77 P.3d at 112).

A settlement "is made in good faith when the totality of circumstances show that the settlement was not collusive or aimed at injuring the interests of the non-settling parties." *Id*. (other citation omitted) (citing *Troyer*, 102 Haw. at 427, 77 P.3d at 112). In addition, a settlement is made in good faith absent "any evidence of collusion, fraud, dishonesty or other wrongful conduct." *Wyndham*, 2010 WL 2347060, at *4 (citing *Troyer*, 102 Haw. at 430, 77 P.3d at 110).

Here, the non-settling entities, Ohana and Hunt (collectively, the "Non-Settling Entities"), have not satisfied their burden of proving that the settlements lack good faith. First, the Non-Settling Entities have not introduced "any evidence of collusion, fraud, dishonesty or other wrongful conduct." *Id.* "The absence of this evidence requires the Court to conclude that the settlement was in good faith." *Id.* (citing *Troyer*, 102 Haw. at 430, 77 P.3d at 110).

Second, the Non-Settling Entities have not demonstrated that the settlements are collusive, aimed at injuring the interests of the Non-Settling Entities, or motivated by any other wrongful purpose. *Troyer*, 102 Haw. at 427, 77 P.3d 83 at 111. As previously noted, the release in the settlement agreement expressly excludes claims that the settling plaintiffs "currently may have against his/her

landlord or property manager," such as the Non-Settling Entities.  ECF No. 146-4 at 2 ¶ 4.  Ohana and Hunt take issue with the scope of the release of claims against Defendant.  The settlements, however, are not required to resolve all of the settling plaintiffs' claims against all possible tortfeasors.  HRS § 663–15.5 does not turn on maximizing the benefit of a settlement to non-settling entities or ensuring equitable apportionment of settlements.  Instead, the focus of HRS § 663–15.5 is to encourage settlements.  *Durham v. Cnty. of Maui*, CIV. No. 08-00342 JMS/RLP, 2011 WL 1135082, at *5 (D. Haw. Mar. 23, 2011) (citing *Troyer,* 102 Haw. at 426, 77 P.3d at 110).  Here, the settling plaintiffs made a calculated decision, with the assistance of experienced counsel, to resolve their claims against Defendant after weighing the risks, expenses, and uncertainties of further litigation.  HRS § 663–15.5 encourages such decisions.

Third, the Petition's reliance on the damages awarded in the Final FOFCOL does not prove that the settlements lacked good faith.  Although the settling plaintiffs may have been able to recover more at trial than the bellwether plaintiffs, that claim is speculative and does not evidence collusion or a lack of good faith.  *See Kane v. PaCap Aviation Fin., LLC*, CIV NO. 19-00574 JAO-RT, 2023 WL 9101973, at *4 (D. Haw. Dec. 19, 2023) ("Defendants have not provided any argument explaining why the *Settlement* amount tends to show that the *Settlement* may be collusive or injurious to the interest of a non-settling joint tortfeasor."),

*adopted by* 2024 WL 50943 (D. Haw. Jan. 4, 2024). That the settling plaintiffs "made the calculated choice to settle their claims against Defendant . . . for substantially less than they may have sought individually against Defendant . . . or collectively from the other defendants at trial is entirely their prerogative." *Id.* In addition, Ohana and Hunt's focus on the settlement amounts conflicts with the Hawaii Supreme Court's conclusion that "the price of a settlement alone rarely appears to be the outcome-dispositive factor regarding a settlement's bad faith." *Troyer*, 102 Haw. at 427, 77 P.3d at 111.

The Court has carefully considered the parties' and Non-Settling Entities' submissions, the terms of the settlements, the *Troyer* factors, and the totality of the circumstances. The parties, represented by experienced counsel, reached the settlements through extensive, hard fought, and arms-length negotiations. The Court has had numerous and ongoing settlement discussions with counsel for the parties to facilitate the resolution of plaintiffs' claims. The settlement amounts are tethered to the *Feindt* bellwether trial decision. The settlements reflect a logical, fair, and good faith resolution of this complex and contentious case in light of the risks, costs, and uncertainties of further litigation. Settlements such as these are the only viable means of efficiently resolving this large and complex docket.

Based on the foregoing, the Court finds that the Non-Settling Entities have not satisfied their burden of proving that the settlements lack good faith. The

10

Court further finds that the settlements between the subject settling plaintiffs and Defendant were entered into in good faith for the purposes of HRS § 663–15.5. Accordingly, the Court recommends that the district court grant the Petition.

In light of this recommendation, the Non-Settling Entities request confirmation that they:  (1) are entitled to an offset for any damages in the full amount of each settlement; and (2) be permitted to pursue any direct claims against the United States other than for contribution or equitable indemnity.  Such findings, however, are premature because the effect of the settlements is unknown at this time.  *See* ECF No. 149 at 7 ("In light of the Government's express admission of liability for the Red Hill fuel leak and resulting contamination, it would be fundamentally unfair if, *in the event that military housing operators are somehow held liable for the Housing Claims*, they cannot seek equitable contribution from the Government." (emphasis added)); *id.* at 23–24 n.11 (Ohana and Hunt identifying potential issues in the tenants' recovery of housing costs). The Non-Settling Entities do not provide specific information regarding the claims affected by a good faith finding or any damages awards for which any offsets should be applied.  The Court's good faith finding does not foreclose a subsequent determination regarding the effect of the settlements on the Non-Settling Entities.

Under the circumstances, the Court thus declines to make the requested findings regarding the effect of the settlements on the Non-Settling Entities.  *See*

*Wyndham*, 2010 WL 2347060, at \*4 ("The Court declines to make the specific finding requested by Notkin that Plaintiff's claim for damages against the remaining parties be reduced by the amount of consideration stipulated in the settlement.").

## CONCLUSION

Based on the foregoing, the Court FINDS that the settlements between the subject settling plaintiffs, as listed in ECF No. 146-3, and Defendant United States of America were made in good faith under HRS § 663–15.5.  The Court thus RECOMMENDS that the district court GRANT the Petition for Good Faith Settlement Determination (ECF No. 146).

IT IS SO FOUND AND RECOMMENDED.

DATED:  Honolulu, Hawaii, April 30, 2026.



_____
Kenneth J. Mansfield
United States Magistrate Judge

*Alaimaleata, et al. v. United States, et al.*, Civil No. 23-00164 LEK-KJM; Findings and Recommendation to Grant United States' Petition for Good Faith Settlement Determination (ECF No. 146)